UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 15-CV-62112-Cooke
(CASE NO. 11-CR-60150-Cooke)
Magistrate Judge P.A. White

DOUGLAS NEWTON,
    Movant,
v.

UNITED STATES,
    Respondent.

**RESPONSE TO MOTION TO VACATE/
SECTION 2255 PETITION**

The United States, through the undersigned Assistant United States Attorney, respectfully submits this Response to Defendant Douglas Newton's Motion, Pursuant to 28 U.S.C. § 2255, to Vacate his Sentence, (DE 1, Case No. 15-CV-62112; DE 239 in Case No. 11-Cr-60150-Cooke), and this Court's Order to Show Cause (DE 6, Case No. 15-CV-62112).[1]  In his Motion, the Petitioner raises arguments related to covert operations, evidence of use of fraud proceeds, and Defense Counsel's failure to call an expert witness at trial.[2]  This Court should deny all of the Petitioner's claims because none of the alleged violations (if proven) rise to the level of a "fundamental defect which inherently result[ed] in a complete miscarriage of justice."  Davis v. United States, 417 U.S. 333, 346 (1974).

---

[1] Unless otherwise noted, all citations below to Docket Entries are to the original criminal case.
[2] To assist this Court in reviewing Petitioner's claims, the undersigned reorganized the claims thematically.

**BACKGROUND**

    **I.    Procedural Background**

A federal grand jury in the Southern District of Florida returned a second superseding indictment charging Petitioner Douglas Newton with two counts of mail fraud, in violation of 18 U.S.C. §§ 1341 and 2 (Counts 1 and 2); one count of conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371 (Count 5), and four counts of securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff(a), 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2 (Counts 3-4, 6-7) (DE 19).

Newton signed a plea agreement with the United States, in which he acknowledged his participation in the illegal scheme (DE 2). However, Newton refused to abide by that Plea Agreement and, instead, went to trial.  He was found guilty of all counts.  The District Court then sentenced Newton to 30 months' imprisonment as to each of Counts 1 through 7, to run concurrently, followed by one year of supervised release (DE 200; DE 201).

On appeal, Newton argued that there was insufficient evidence to sustain his convictions and that the District Court erred in admitting evidence about the use of fraud proceeds, among other issues.  The Court of Appeals for the Eleventh Circuit rejected all of the Newton's arguments.  United States v. Newton, 559 F. App'x 902, (11th Cir. 2014).  Newton's attorneys then sought review of

certain issues before the en banc Court and the Supreme Court, but Newton's direct appeal ended on October 6, 2014, when the Supreme Court denied Newton's writ of certiorari. Case No. 14-5956, 135 S. Ct. 308 (Oct. 6, 2014).

## II. Factual Background

The Eleventh Circuit Court of Appeals described the evidence against Mr. Newton in great detail (559 F. App'x at 905-09), but the facts from that opinion relevant to the three areas of dispute in Petitioner's Motion to Vacate can be summarized briefly as follows:

Petitioner Douglas Newton was the CEO of penny stock retail company called RLAB. In 2009, Newton spoke with Richard Epstein about a fund-raising opportunity for RLAB. Specifically, Epstein told Newton that Epstein knew an individual who controlled the assets of a pension fund. If Newton paid an improper, undisclosed kick-back to that pension fund fiduciary, the pension fund would invest in RLAB. Doing so, however, would violate the pension fund fiduciary's obligations to invest based solely on the best interests of the pension fund.

Newton agreed to this illegal arrangement. The trial evidence showed that Newton made a series of $6,000 payments as bribes to the pension fund's manager. In exchange, the pension fund purchased RLAB stock. In addition, Newton concealed the true reasons for the undisclosed payments, for example, by signing bogus consulting

agreements with a third company.

Alas, all of Newton's transactions were recorded on audio/video tape. At the time of the transactions, Richard Epstein was cooperating with law enforcement, the pension fund was fictitious, and Newton was captured committing fraud during an FBI covert operation.

At trial, the government also introduced evidence that Newton used fraud proceeds for personal expenses. As the Court of Appeals noted:

> Between March 25, 2009, and June 22, 2009, [Newton's] participation in the fraudulent scheme netted him $14,000 from each of the two RLAB stock sales ($20,000 purchase price minus his $6,000 kickback), plus $6,000 from [a second company] for a total of $34,000. During that same time period, Defendant wrote checks on the [corporate] account for his own personal expenses, including his homeowners' association, his country club, his residential gas and electric bills, and the rent on his son's apartment. On the other hand, between April and August 2009, Defendant paid only $13,000 of the approximately $196,620 that [Newton's company] owed in back rent for its retail space in Trump Plaza.

Newton, 559 F. App'x at 908.

**ARGUMENT**

This Court should deny all of the Petitioner's claims for relief for the reasons identified below.

**I.   This Court Should Deny Petitioner's Claim Regarding Covert Operations.**

In his Motion, Newton raises three claims regarding the use of a covert operation, which mirror the pro se Motion to Dismiss that

4

Newton filed in the District Court. (See DE 67, DE 118) First, he claims, as he did before the District Court, that the use of a covert operation violated his rights (Ground One).  Second, he claims that the government misinformed the Court as to his prior securities fraud, thereby inducing the Court to deny his Motion to Dismiss on improper grounds (Ground Two).  Third, he faults the Court for not holding a hearing on his claim that covert operations violate the law (Ground Three).

To prevail on any of these three claims, Newton has a very high burden.  Indeed, he must show the alleged violations resulted in "fundamental defect[s] which inherently result[ed] in a complete miscarriage of justice."  Davis v. United States, 417 U.S. 333, 346 (1974).  As the Eleventh Circuit Court of Appeals recently explained in Spencer v. United States, however, "Section 2255 does not provide a remedy for every alleged error in conviction and sentencing."  773 F.3d 1132, 1138 (11th Cir. 2014) cert. denied, 135 S. Ct. 2836 (2015) (emphasis added). Instead, when a petitioner alleges that his "sentence was imposed in violation of the ... laws of the United States ... or is otherwise subject to collateral attack," under 28 U.S.C. § 2255(a), a district court lacks the authority to review the alleged error "unless the claimed error constitute[s] 'a fundamental defect which inherently results in a complete miscarriage of

5

justice,' " United States v. Addonizio, 442 U.S. 178, 185, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979) (quotation omitted).

In this case, none of the alleged wrongs that Newton identified rises to the level of a "fundamental defect." To the contrary, all of Newton's arguments about the use of a covert operation fail because the "reverse sting" is "a completely acceptable federal device as long as the predisposition to commit crime is present. . . ." United States v. Knight, 917 F.2d 1, 2 (5th Cir. 1990). (See also DE 74 (citing cases)). Indeed, numerous courts have held that reverse sting operations like the one at issue in this case do not violate a defendant's constitutional rights where (as here) a defendant is not entrapped by police conduct. See United States v. Sanchez, 138 F.3d 1410, 1413 (11th Cir. 1998). See also United States v. Osborne, 935 F.2d 32, 37 (4th Cir. 1991)(describing "the abundant and lenient appellate precedent concerning the constitutionally permissible government conduct in undercover operations"); United States v. Sarraj, 665 F.3d 916 (7th Cir. 2012). Indeed, in United States v. Gifford, the First Circuit Court of Appeals rejected a defendant's claim (similar to Newton's) that such sting operations are unconstitutional because there was no rational basis for the undercover operation and the government supplied the contraband. 17 F.3d 462, 471 (stating the "Executive Branch is free, within broad limits, to set such snares for unwary criminals").

Because the case law clearly states that covert operations are a legitimate law-enforcement function, Newton cannot meet his burden of showing that his conviction suffered from a "fundamental defect" sufficient to warrant relief. For this reason, Newton's First Ground of relief fails.

Relatedly, this Court should deny Newton's Second Ground for relief. In his Motion, Newton claims that the government misled the Court when it stated that it had evidence of prior misconduct by Mr. Newton. He also alleges that the government hid the fact from the Court that the source of its information was cooperator Richard Epstein.

Nothing could be further from the truth. The government informed the Court of the exact relationship between Mr. Epstein and Mr. Newton <u>before trial</u> (DE 124) and played at trial a recording between Mr. Epstein and Mr. Newton where they discussed how they "have done a bunch of deals, probably five, six, seven deals together" before the crimes alleged in the Superseding Indictment (Tr. 5/2/2012 at 73.) Indeed, the very facts that Newton complains were hidden from the Court were played <u>in open court</u> at the trial. In addition, Newton himself made the Court aware of Mr. Epstein's failure to follow agent instructions in his Motion to Dismiss (DE 67), undermining his argument that the Court was unaware of the basis for the FBI's covert operation against Mr. Newton.

Furthermore, Newton's Second Ground for relief fails because, as discussed above, the government is free to conduct covert operations as it chooses, and the existence of any predicate acts by this Petitioner are irrelevant. As a result, even if Newton could prove that the government overstated his criminal history (which he cannot), his claim still fails to meet the "fundamental defect" standard.

Finally, Newton's Third Ground for relief fails because Newton cannot show that he suffered a "fundamental defect" when the Court refused to hold a hearing on his Motion to Dismiss. As a preliminary matter, the Court did, in fact, discuss the Motion in open court. (DE 118 (denying Motion to Dismiss after "a hearing being held")). Furthermore, there was no requirement for a hearing on Newton's Motion to Dismiss because a criminal proceeding in which the court denies a defendant an opportunity to speak does not result in a "fundamental defect" warranting relief under Section 2255. Hill v. United States, 368 U.S. 424, 428 (1962).[3] Finally, the Motion to Dismiss lacked merit for the arguments raised earlier, something that a hearing could not rectify.

---

[3] It is worth noting that it does not appear that even Mr. Newton believes that his claims meet his high burden. In his Motion, Newton noted that he agreed with appellate counsel that this issue was not strong enough to justify review by the Court of Appeals. (DE 239 at 4.) This Court should similarly find that Newton defaulted his First and Second Grounds for relief, and the issues were not sufficiently "strong" to prove a "fundamental defect."

For all these reasons, this Court should reject Petitioner's claims regarding the use of covert operation.

**II. This Court Should Reject Petitioner's Claims Regarding Use of Funds.**

This Court should also reject Petitioner's two claims regarding the use of fraud proceeds. As discussed above, Newton claims that the District Court improperly permitted Special Agent Sputo to testify about the use of fraud proceeds (Ground Six). Relatedly, Newton argues that the government had an obligation to search through the SEC's files to prove that, in fact, Newton used the fraud proceeds for the benefit of his company (Ground Four). Both claims lack merit.

This Court should deny Petitioner's Sixth Ground for relief for two reasons. By way of background, in his Motion to Vacate, Newton complains that the District Court permitted the agent to testify about the use of fraud proceeds (DE 239 at 14). The Court of Appeals for the Eleventh Circuit, however, already addressed that claim on direct appeal. Specifically, the Court of Appeals noted:

> Following a review of the record, we determine that Sputo's testimony was not improperly admitted. Sputo testified that based on his review of bank records, Defendant had used corporate funds to pay for his homeowners' association, country club, son's apartment, and other personal expenses. Such testimony was permissible for a lay witness consistent with Federal Rule of Evidence 701. See Agro Air Assocs., Inc. v. Houston Cas. Co., 128 F.3d 1452, 1456 (11th Cir.1997) (finding that, pursuant to Rule 701, a lay witness is entitled to testify about their "opinions or inferences" which may be helpful to give a

clear understanding of the witnesses testimony). Furthermore, Sputo was subject to cross-examination on this testimony, therefore "any objection to the testimony went to the weight of the evidence, not to its admissibility." Id.

In this case, the issue of the admissibility of certain evidence (Ground Six) was already raised in the District Court and Court of Appeals. "At least where there has been no intervening change in controlling law, a claim or issue that was decided against a defendant on direct appeal may not be the basis for relief in a § 2255 proceeding." Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012)(citing United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000) ("Once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255.")).

Assuming this Court could review Newton's claim, that claim would fail on the merits. As the Court of Appeals already held in Agro Air Assocs., Inc. v. Houston Cas. Co., 128 F.3d 1452, 1456 (11th Cir.1997), a lay witness – like Special Agent Sputo – can testify about their "opinions or inferences" which may be helpful to give a clear understanding of the witnesses testimony, so long as the other side can cross examine that witness (which occurred here).  For this reason, Newton cannot show a "fundamental defect" when the District Court followed the rules of evidence.[4]

---

[4]   United States v. Garza, 608 F.2d 659, 662 (5th Cir. 1979) ("A

In addition, this Court should deny Newton's Fourth Ground in which he claims that the government had an obligation to disclose materials in the SEC file. By way of background, Newton believes – without citing to any evidence – that the Securities and Exchange Commission has evidence to show that Newton used his home as an office and that payments for his son's apartment were, in fact, business-related.

Newton's claim fails because he cannot show a "fundamental defect" in the proceedings. First, there was no discovery violation when Douglas Newton already knew the information that he purportedly should have received from the government. Indeed, at trial during the cross-examination of Agent Sputo, Counsel for Newton repeatedly asked questions about where Newton's son lived (Tr. 5/7/2012 at 116-19), Newton's use of a country club (id. at 119-21), and payments to his homeowner's association (id. at 121-26). That is, Newton was fully aware of these issues, he himself had the information with which to prove that the fraud proceeds were allegedly being used for legitimate purposes, and he cannot prove a "fundamental defect" for

---

criminal trial provides a neutral arena for the presentation of evidence upon which alone the jury must base its determination of a defendant's innocence or guilt. Attorneys for both sides, following rules of evidence and procedure designed to protect the neutrality and fairness of the trial, must stage their versions of the truth within that arena. That which has gone before cannot be considered by the jury except to the extent it can be properly presented at the trial and those things that cannot properly be presented must not be considered at all.").

11

failure to disclose something that Petitioner knew about and could have introduced during trial.

Second, as a legal matter, the government does not have a constitutional duty to search for and disclose information possessed by other federal or local agencies that are not involved in the investigation or prosecution of the case. See United States v. Pelullo, 399 F.3d 197, 218 (3d Cir. 2005) (no Brady violation regarding documents collected by civil branch of Department of Labor, where there was "no indication" that the Department and the prosecution "engaged in a joint investigation or otherwise shared labor and resources," nor "any indication that the prosecution had any sort of control over" the Department officials who collected the documents); United States v. Casas, 356 F.3d 104, 115-16 (1st Cir. 2004); United States v. Shryock, 342 F.3d 948, 983-84 (9th Cir. 2003); United States v. Velte, 331 F.3d 673, 680 (9th Cir. 2003); United States v. Zavala, 839 F.2d 523, 528 (9th Cir. 1998); United States v. Morris, 80 F.3d 1151, 1169 (7th Cir. 1996); United States v. Trevino, 556 F.2d 1265, 1270-71 (5th Cir. 1977). In this case, the SEC was not part of the prosecution team.  Instead, the FBI recorded Newton engaging in fraud and then provided those tapes to the SEC for them to bring a separate civil action.  After each agency conducted its independent investigation, the agencies issued a joint press release.

Third, Newton cannot show that the result would have been any different had he had the materials that he claims were in the SEC file.  As discussed above, Newton was on tape bribing a pension fund fiduciary.  The issue of use of fraud proceeds merely provided a motive to explain Newton's actions which were already discussed on the video.  Even without evidence that Newton personally profited from his fraud, the jury heard evidence that he paid an undisclosed kickback payment.  That evidence was more than sufficient for the jury to convict.

For all these reasons, Newton's claims regarding use of fraud proceeds fail.

### III. This Court Should Deny Petitioner's Ineffective Assistance of Counsel Claim.

Finally, this Court should deny Petitioner's ineffective assistance of counsel claim (Ground Five).  In his Motion to Vacate, Newton argues that his Counsel should have called an expert to testify about the term <u>artificially inflated price</u>.  This argument fails because Defense Counsel made a strategic decision to forego that testimony, which would have been easily discredited.

#### A. Petitioner Must Meet a Heavy Burden.

To establish a basis for relief on Ground Five, Newton must meet a heavy burden.  Claims of ineffective assistance of counsel under the Sixth Amendment are examined through the two-part test initially set forth by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S.

668 (1984). To meet the burden of proving ineffective assistance, the movant must first show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment. Id. at 687. If this showing can be made, the movant must then demonstrate that the "deficient performance prejudiced the defense," which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. Unless the movant can make both showings, he cannot prevail. See id. The two prongs of Strickland are known respectively as the "performance" and "prejudice" prongs. When a court evaluates the first prong, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689 (internal citations omitted). This presumption is even stronger where, as here, "the reviewing court is examining the performance of an experienced trial counsel." Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc).

To prove incompetence, a movant "must identify specific acts or omissions that were not the result of reasonable professional judgment, and a court should deem these acts or omissions deficient

only if they 'were outside the wide range of professionally competent assistance.'" Brownlee v. Haley, 306 F.3d 1043, 1059 (11th Cir. 2002) (quoting Strickland, 466 U.S. at 690). As the Eleventh Circuit explained, "the deference afforded an attorney's decision is great and the bar for proving a Sixth Amendment violation is high." Id. In light of the "strong presumption in favor of competence," a movant seeking to prove a Sixth Amendment violation "must establish that no competent counsel would have taken the action that his counsel did take." Chandler, 218 F.3d at 1314-15.

A movant can prevail under the second prong of Strickland only if he can "affirmatively prove prejudice" by showing that counsel's errors "actually had an adverse effect on the defense." Strickland, 466 U.S. at 693. To make this showing, the movant must demonstrate more than "some conceivable effect on the outcome of the proceeding." Id.

Although a movant need not show that the outcome of his case would more likely than not have been different absent counsel's ineffectiveness, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. The Eleventh Circuit has cautioned that "this standard is difficult to meet." Brownlee, 306 F.3d at 1059.

15

In fact, the cases in which a defendant can prove ineffectiveness "are few and far between." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994). When conducting the prejudice inquiry, a court must consider counsel's error in the context of "the totality of the evidence before the judge or jury." Strickland, 466 U.S. at 695.

Significantly, if a reviewing court determines that a movant suffered no prejudice even if counsel's performance was deficient, it can reject an ineffective assistance claim based on the second prong of Strickland without conducting a full analysis of the first prong. Id. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

  B. Defense Counsel Made a Wise Strategic Decision Not to Call an Expert.

Defense Counsel in this case – an experienced Assistant Federal Public Defender - made a wise strategic decision not to call an expert. As discussed earlier, Douglas Newton signed a Plea Agreement with the government in which he admitted criminal liability (DE 2). Defense Counsel, however, successfully argued that the Plea Agreement should be inadmissible at trial. (DE 87) The Court agreed, but warned Defense Counsel that certain arguments would open the door to the introduction of that Agreement.

In this case, Defense Counsel made a strategic decision not to call an expert. To do so would open the door to the introduction

of far more harmful evidence, namely, the Petitioner's own admission of guilt. For this reason, Newton should not fault his Defense Counsel's decision.

  C.  The Result Would Have Been the Same.

  Finally, this Court should reject Newton's argument that, but for Defense Counsel's strategic decision not to call an expert, the result would have been any different. As the Eleventh Circuit already held in the direct appeal, <u>United States v. Newton</u>, 559 F. App'x at 911, the government proved the "artificially inflated price" because the undisclosed kickback payment proved the inflated price. The Court wrote:

> The evidence at trial established that the 30% kickbacks made the price of the stock irrelevant. The parties involved cared only about the kickback payments, not the stock price. <u>In addition, because of the kickbacks, the pension fund purchased restricted shares at the higher price set for freely-traded shares. Thus, the kickback itself artificially increased the stock price.</u> The pension fund paid $20,000 for stock that should have cost only $14,000—absent the $6,000 bribe. Ample evidence existed for the jury to conclude that the fraudulent scheme caused the pension fund to pay inflated prices for the restricted shares of stock.

<u>Id.</u> (emphasis added). That is, the Court of Appeals found it intuitive that a stock price is artificially inflated when an undisclosed kickback exists. Phrased differently, if a store is offering 30% off for a garment but a customers is forced to pay full price without that discount, the customer has paid an artificially inflated price. No expert could credibly testify otherwise.

Furthermore, had Newton called his expert, the government was prepared to offer its own expert who would have undermined the entire defense. (DE 98 (describing anticipated witness testimony). Thus, the outcome of the case would not have been different, and Defense Counsel made a wise strategic decision not to call his expert.

Simply put, Defense Counsel wisely balanced the benefit of calling an expert witness with the potential cost of having the Plea Agreement admitted and a government expert refute the defense expert's counterintuitive testimony.

## CONCLUSION

For all these reasons, this Court should deny Petitioner's Motion to Vacate.

                                Respectfully submitted,
                                WIFREDO A. FERRER
                                UNITED STATES ATTORNEY

                By:   /s/ H. Ron Davidson
                                H. Ron Davidson
                                Assistant United States Attorney
                                Court ID No. A5501144
                                99 Northeast 4th Street
                                Miami, Florida 33132-2111
                                Tel: (305) 961-9405
                                Fax: (305) 530-7976

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on October 20, 2015, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  In addition, I instructed a legal assistant to mail a copy of this Response to the pro se Petitioner at:

    Douglas Newton
    37 Lafayette
    Rancho Mir, CA 92270.

                                s/ H. Ron Davidson
                                Assistant United States Attorney