UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 15-CV-62112-Cooke
(CASE NO. 11-CR-69159-Cooke)
Magistrate Judge P.A. White

FILED by _AP_ D.C.

FEB 24 2016

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

DOUGLAS NEWTON,
  Movant,

v.

UNITED STATES,
  Respondent

## MOVANT'S REQUEST FOR HEARING
### Re:   SECTION 2255 PETITION

This is to request that the Court hold a hearing to confirm the truth of certain allegations

and contentions made by me in my 18 USC 2255 petition for relief (DE 1 filed Oct. 6, 2015.)

A hearing is asked for based on my recent discovery of "new" information from the testimony

given at the trial of Mr. Marc Page, who raised an entrapment defense and was found not

guilty.(Case No. 12-60064-CR-Rosenbaum).   The Page trial and testimony yields information

about how sting-targets were identified by FBI Agent Michael Sputo and his undercover

informant, Richard Epstein, while also providing information about Mr. Epstein's own bad

character and lies.

Accordingly, I believe it would benefit me, and hopefully future sting-targets, if a

hearing was held, in order to address 1) my contention that Agent Sputo had *no evidence*

in his possession of any prior "history" and disposition on my part to commit securities fraud,

save only what he was told by Epstein, when Agent Sputo gave the go-ahead to begin the secret

tape-recording and targeting of me in possible violation of the privacy rights of an American

citizen; and 2) my serious allegation that the federal prosecutor (H. Ron Davidson) made up "facts" or otherwise misrepresented to Judge Marcia G. Cooke the "criminal" information about me he warranted as being in the government's possession when he told the Court why law enforcement was more than justified in targeting me.  (See also Defense counsel's motion of June 25, 2012 (DE 150 attached) re Rules of Criminal Procedure.)

As stated in my 2255 petition (15-CV-62112-Cooke at DE 1),  these representations were presented to Judge Cooke *as gospel* (both in writing (DE 74) and verbally by Mr. Davidson in response to my due process motion (DE 67) just before the Judge was asked to consider and rule on the motion at a hearing I was given no prior notice of, or the chance to attend.  Neither was my own attorney apparently prepared for such a hearing.  Moreover, Judge Cooke herself, needed prompting from the AUSA to take up the motion, when she asked the question: "Was that on the docket sheet?  I didn't see that." (DE 1, page 7B and 7C.)

A new hearing could also question Mr. Davidson-- in addition to Agent Sputo -- as to what he did to obtain and / or corroborate his "facts" about my purported "history" of prior criminal conduct.  If his "evidence" -- which was designed to make an impression on Judge Cooke -- came from interviews or files in possession of the FBI or other agencies, e.g. the SEC, should not Mr. Davidson be asked now:  How does this square with his position (at DE 185) that he had no obligation to search for Brady material in my SEC file or elsewhere  (ground #4 in DE 1)?

Furthermore, the Court may want to know more about Mr. Epstein, himself, whom the FBI used to produce scores of "candidates" for the sting campaign (*sometimes referred to as "Operation Fishkill" because getting convictions from the large number of small time, penny stock defendants would be as easy as shooting fish in a barrel.)*  As revealed from the trial of

Mr. Page, et alia, Epstein is shown to be a prolific liar whose cooperation with Agent Sputo was marked by fraud and deceit. *

It may also be relevant to note as cited by Mr. Page's attorney, AFPD, Timothy M. Day (see DE 122 page 2) that Epstein's undercover work for the government "had its origin in Epstein's attempt, which proved successful, to escape incarceration and/or responsibility for crimes committed in a federal prosecution against him in Pennsylvania, pending at the time of his repeated contacts with Mr. Page" and with me.

Thus, at a new hearing, it may be important to ask Mr. Davidson whether he knew about Epstein's "history" of lying, or that Epstein already had been caught in a real crime, with real victims who lost between $400,000 and $1,000,000 in real money calling for a guideline sentence of 33-41 months in jail. * *

More specifically, did the government have a responsibility to disclose such information about Epstein to Judge Cooke and to my counsel, or was it acceptable that the Court *not* be told that the source of some or all of Agent Sputo's justification for targeting me was based on the word of a proven liar whose job was to deliver as many new "candidates" to the pre-set sting campaign as could be mustered?

---

* Marc Page DE 122 page 3 of 12: "In spite of being expressly instructed to terminate all penny stock trading during his cooperation, agents caught Epstein violating those instructions. Incredibly, when confronted with his chicanery, Epstein lied to agents and maintained that he was not involved in any trading."

* * In the Florida based sting campaign, the designers of the operation bought exactly $40,000 worth of stock from each company so the government could run up a defendant's sentencing points to an "intended" loss level of between $30,000 and $70,000.  Because I referred a friend to Epstein's purported investor, conspiracy charges were added to my indictment;  I was judged to have caused an "intended loss" of two times $40,000 or $80,000 (although the stock market values never declined and actually increased);  and my prison sentence was set at 30 months.

In my case, I fought the charges against me, believing the government could not prove that I made material misrepresentations or sold $40,000 worth of stock (to Epstein's fictitious investors) at an artificially inflated price; I lost both at trial, and at the Appellate level, contending there was no actual or intended financial loss (see my June 17, 2014 letter to Appellate Counsel); no market manipulation ever done by me, and never any subjective intent or "mens rea" on my part to break the securities laws, or bring financial harm or injury to anyone.

In the end, while I am hardly in a position to ask law enforcement to stop spending time and resources facilitating the commission of a crime of the government's own design and making, I hope that Justice Brandeis's long-standing opinion will be taken to heart, namely that there is a general constitutional right "to be let alone" which is "the most comprehensive and valued right of civilized people."

-- Douglas Newton (BOP # 96993-004)

*February 24, 2016*

---------------------------------------------------------------

Copy of June 17, 2014 letter re "intended loss" is below

To: Tracy Dreispul, Esq--                          June 17, 2014
FR: Doug Newton @ TAFT PRISON

Re: Memo # 29 : Supreme Court Petition

Dear Tracy—

I know that "life" is not always fair and consistent, but our laws should be, don't you think? And as the Supreme Court "textualist" Justice Scalia has written "What the law says, it says. I'm bound by the law whether I like the outcome or not."

When you prepare our petition for Supreme Court review -- in addition to the "misrepresentation" issue -- I certainly hope we can raise the issue of loss as well, and more specifically how to define "intended loss", because of the following:

The circuits across the U.S. are not clear or consistent in how to define intended loss. Back in 2011 or 2012, there was lots of legal commentary on the internet, and excellent articles written about the MANATAU case in the 10 th circuit (UTAH I believe) in which the appeals court focussed on the importance of the subjective intent of the

page 2 of 4

defendant and his/her _mens rea_ as to what financial loss or harm was actually intended. Given that a prisoner's term of incarceration is directly tied to a judge's calculation of the dollar amount of intended loss -- as it was in my case -- one would hope that there could be some solid Supreme Court opinion as to how to define "intended loss" across all circuits in the country.

I believe my appellate panel went against the specific language in the sentencing guidelines requiring judges to take into account the market value of RLAB stock. One of the judges at oral argument appeared to head in that direction when he asked about the "threshold level" of this loss table, and whether a smaller loss would affect my prison sentencing points level, but AUSA Davidson gave an erroneous and/or misleading answer to this question.

Moreover, none of the judges appreciated your argument that not only was there no economic loss -- and no actual loss even if the pensioners actually existed -- but also there was no intent on my part to cause harm or loss. This apparent lack of concern for my mens rea clearly suggests that this circuit, unlike Manhattan, has a different interpretation



page 3 of 4

of what is meant by the word "intended." The MANATAU decision also contains some great analysis, and commentary as to what Congress + the Sentencing Commission intended, to be sure.

I hope you can find a way to bring this issue to the high court - not for my sake but for countless defendants whose motivation + mens rea ought to be considered trasocted as the degree to which before they are shuffled off to prison for terms that are longer than they and their families deserve, and a just society demands.

In addition, I am happy you will raise the issue of whether the 11th Circuit properly applied another "mens rea" issue, namely the "misrepresentation" element and I hope the Supreme Ct. considers this issue in the context of sting cases where crime is not so much fought, as manufactured by the govt., and where there was no intent to or my part to trick, deceive or take advantage of the pensioners or their "representatives—"

page 4 of 4

In closing, given the Sept 1st due date, would you be able to send me a copy of our petition to the Supreme Court beforehand, so hopefully I can give you my input on same?

Meantime, even though I am sad and so disappointed over how bad has been my personal outcome, it is all the more sad and surprising because this occurred in the context of all the excellent, exceptional hard work you've done on my behalf –

I will always be grateful to you for that.

Sincerely —

Doug Newton – 8/17/14

# FEDERAL PUBLIC DEFENDER
## Southern District of Florida

Michael Caruso
**Federal Public Defender**

Location:    Miami

**Hector A. Dopico**
**Chief Assistant**

<u>Miami:</u>

**Helaine B. Batoff**
**Sowmya Bharathi**
**R. D'Arsey Houlihan**
**Anthony J. Natale**
**Paul M. Rashkind,**
   **Supervising Attorneys**

**Bonnie Phillips-Williams,**
   **Executive Administrator**

Stewart G. Abrams
Alex Arteaga-Gomez
Abigail Becker
Katie Carmon
Vanessa L. Chen
Timothy Cone
Tracy Dreispul
Daniel L. Ecarius
Aimee Ferrer
Ayana Harris
Celeste S. Higgins
Paul M. Korchin
Bunmi Lomax
Christine O'Connor
Joaquin E. Padilla

<u>Ft. Lauderdale:</u>

**Robert N. Berube,**
   **Supervising Attorney**

Janice Bergmann
Brenda G. Bryn
Timothy M. Day
Chantel R. Doakes
Robin J. Farnsworth
Margaret Y. Foldes
Bernardo Lopez
Jan C. Smith
Michael D. Spivack
Gail M. Stage
Daryl E. Wilcox

<u>West Palm Beach:</u>

**Peter Birch,**
   **Supervising Attorney**

Robert E. Adler
Lori E. Barrist
Nelson M. Marks
Robin C. Rosen-Evans

<u>Fort Pierce:</u>

Panayotta Augustin-Birch
R. Fletcher Peacock

*Attorney-Client Privilege*

August 1, 2014

Douglas Newton
Reg. No. 96993-004
Taft Correctional Institution
P.O. Box 7001
Taft, CA 93268

Dear Doug:

   I hope you are doing well this summer. I received your letter (# 29) regarding the Supreme Court petition.   You raised some good points regarding the loss calculation. However, I am still not inclined to raise that issue in the cert petition several reasons.

   First, the United States Sentencing Commission is itself tasked with monitoring and responding to conflicts in the Circuits' interpretations of the Guidelines.   As a general matter, if the Circuits are interpreting the Guidelines differently or incorrectly, the Commission itself will issue clarifying amendments or language to remedy the conflict. Therefore, it is rare that the Supreme Court will get involved in a dispute over how the guidelines should be applied.

   Second, and more importantly, by the time the issue could possibly be resolved by the Court, your sentence will have been completed.  While I am sure we could come up with a technical legal argument why the sentencing issue was not "moot," it would likely be viewed that way by the clerks who are determining which scarce few cases to take.

   In cert petitions, it is better to stick to the issues that are more likely to get the Court's attention.  So, even though I think you have raised good points, I am still inclined to stick to the lack of misrepresentation as indicated in the 11th Circuit's opinion.

---

| **Miami** | **Ft. Lauderdale** | **West Palm Beach** | **Ft. Pierce** |
|---|---|---|---|
| 150 West Flagler Street | One East Broward Boulevard | 450 Australian Avenue South | 109 North 2nd Street |
| Suite 1500 | Suite 1100 | Suite 500 | Ft. Pierce, FL 34950 |
| Miami, FL 33130-1555 | Ft. Lauderdale, FL 33301-1842 | West Palm Beach, FL 33401-5040 | Tel: (772) 489-2123 |
| Tel: (305) 536-6900 | Tel: (954) 356-7436 | Tel: (561) 833-6288 | Fax: (772) 489-3997 |
| Fax: (305) 530-7120 | Fax: (954) 356-7556 | Fax: (561) 833-0368 | |

Douglas Newton
August 1, 2014
p.2


      I will send you a copy of the petition when it is filed.   In the meantime, as always, feel free to contact me with any concerns.

                           Sincerely,

                           Tracy Dreispul


td/cfp

# FEDERAL PUBLIC DEFENDER
## Southern District of Florida

**Michael Caruso**
**Federal Public Defender**

Location:  __Miami__

**Hector A. Dopico**
**Chief Assistant**

October 16, 2014

Miami:

**Helaine B. Batoff**
**Sowmya Bharathi**
**R. D'Arsey Houlihan**
**Anthony J. Natale**
**Paul M. Rashkind,**
    **Supervising Attorneys**

**Bonnie Phillips-Williams,**
    **Executive Administrator**

Stewart G. Abrams
Alex Arteaga-Gomez
Abigail Becker
Katie Carmon
Vanessa L. Chen
Timothy Cone
Tracy Dreispul
Daniel L. Ecarius
Aimee Ferrer
Ayana Harris
Celeste S. Higgins
Paul M. Korchin
Bunmi Lomax
Christine O'Connor
Joaquin E. Padilla


Ft. Lauderdale:

**Robert N. Berube,**
    **Supervising Attorney**

Janice Bergmann
Brenda G. Bryn
Timothy M. Day
Chantel R. Doakes
Robin J. Farnsworth
Margaret Y. Foldes
Bernardo Lopez
Jan C. Smith
Michael D. Spivack
Gail M. Stage
Daryl E. Wilcox


West Palm Beach:

**Peter Birch,**
    **Supervising Attorney**

Robert E. Adler
Lori E. Barrist
Nelson M. Marks
Robin C. Rosen-Evans


Fort Pierce:

Panayotta Augustin-Birch
R. Fletcher Peacock

Mr. Douglas Newton
BOP No. 96993-004
CI Taft
P.O. Box 7001
Taft, CA 93268

Re:   *United States v. Douglas Newton*
       Supreme Court Case No. 14-5956

Dear Doug:

I am deeply sorry to inform you that the Supreme Court has denied your petition for a writ of certiorari.   Enclosed is a copy of the Supreme Court's letter advising me of its decision.

In the event that you decide to file a petition for habeas relief pursuant to 28 U.S.C. § 2255, you have until October 6, 2015 -- one year from the date of the Supreme Court's denial of your certiorari petition -- in which to do so.  Should you need any materials from your file in preparing such a petition, please let me know and I will send them to you.

Needless to say, I am very disappointed that the Court did not recognize the merits of your petition, as I know you will be.  Even in the midst of the legal setbacks you've encountered, though, I hope you remain strong in your resolve to overcome your obstacles and to strive for a better future.  I wish you all the best.

Sincerely,

Tracy Dreispul
Assistant Federal Public Defender

TD/cpf

enclosure
P:\Newton, Douglas Reg96993-004\Appeal\Letters and Memos\cert denied-sorry letter to client.wpd

---

| **Miami** | **Ft. Lauderdale** | **West Palm Beach** | **Ft. Pierce** |
|---|---|---|---|
| 150 West Flagler Street | One East Broward Boulevard | 450 Australian Avenue South | 109 North 2nd Street |
| Suite 1500 | Suite 1100 | Suite 500 | Ft. Pierce, FL 34950 |
| Miami, FL 33130-1555 | Ft. Lauderdale, FL 33301-1842 | West Palm Beach, FL 33401-5040 | Tel: (772) 489-2123 |
| Tel: (305) 536-6900 | Tel: (954) 356-7436 | Tel: (561) 833-6288 | Fax: (772) 489-3997 |
| Fax: (305) 530-7120 | Fax: (954) 356-7556 | Fax: (561) 833-0368 | |

# Supreme Court of the United States
# Office of the Clerk
# Washington, DC  20543-0001

Scott S. Harris
Clerk of the Court
(202) 479-3011

October 6, 2014

Ms. Tracy Dreispul
Assistant Federal Public Defender
150 W. Flagler Street
Suite 1500
Miami, FL  33130-1555

> Re:  Douglas Newton
>      v. United States
>      No. 14-5956

Dear Ms. Dreispul:

The Court today entered the following order in the above-entitled case:

The petition for a writ of certiorari is denied.

Sincerely,

Scott S. Harris, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 11-60150-CR-COOKE(s)(s)

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

DOUGLAS NEWTON,

       Defendant.

_____/

## DEFENDANT'S MOTION FOR NEW TRIAL PURSUANT TO RULE 33 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

    The defendant Douglas Newton, through undersigned counsel, and pursuant to Rule 33 of the Federal Rules of Criminal Procedure respectfully moves for a new trial and in support says:

    Mr. Newton was convicted after jury trial on charges that he intended to defraud a pension fund in that he paid a kickback to the fiduciary of the fund in order to induce the fund to purchase stock in RLAB at an artificially inflated price. The court instructed the jury that in order to find Mr. Newton guilty they had to find that he intended to deceive or cheat the pensioners either for personal gain or to cause financial loss. The court instructed the jury that, "To act with intent to defraud means to act knowingly and with specific intent to deceive or cheat someone, usually for personal gain or to cause financial loss to someone else." The heart of the government's allegations and the basis of our defense concerned Mr. Newton's intentions, specifically whether he was acting with the intent to hurt the fund and or to bring personal gain to himself.

    The evidence presented by the government's last witness Michael Sputo consisted of

improper hearsay testimony which was then used by the government in its closing argument to paint a picture of Mr. Newton as a greedy, selfish man who used the funds money for personal gain. We believe the introduction of this evidence was erroneous and that the government's use of the improperly admitted evidence denied Mr. Newton a fair trial.

The jury concluded that Mr. Newton had committed fraud and we believe this decision was due in large part to the testimony of the government's last witness-Special Agent Michael Sputo. He testified that the night before his testimony he had done some investigation which resulted in evidence concerning how Mr. Newton spent some of the money paid to him by the fund. Specifically, the agent testified that on the Sunday evening before he took the witness stand that he made a phone call to a club that had received checks from Mr. Newton and was told that it was a private golf club. He also checked some records and determined that the payees on some of the checks issued by Mr. Newton were the condominium homeowners association for Mr. Newton's home in addition to other companies such as the provider of cable television service. Finally, he testified that he reviewed other records and determined that another payee was a company that received rental payments for Mr. Newton's son's apartment.

The defendant objected to the introduction of this evidence on the grounds of hearsay. The court overruled the objection and allowed the witness to testify. During closing argument the government repeatedly stated that Mr. Newton had used the money received from the pension fund to make inappropriate payments for personal expenses. The defendant believes that the combination of the inadmissible hearsay and the government's prominent use of this evidence during closing argument denied Mr. Newton a fair trial. He asks the court to vacate the jury verdict and grant him a new trial.

The defense was surprised by this evidence and this argument. The indictment made no allegation that Mr. Newton improperly used any of the money received from the fund. The government only provided a copy of Mr. Newton's company's bank statements for the year 2009. Three of the payees in some of the checks included in these statements were the club, the condominium association and the company that collected the rent due on his son's apartment. The government did not produce any documentation verifying the results of the agent's last-minute investigation. Neither did the government inform the defendant that it intended to offer such proof at trial. Due to the surprise, the defendant asked the court to declare a mistrial or in the alternative to continue the trial so that he could investigate these allegations and present evidence to the jury that the money used to pay for each of the items were legitimate business expenses. Had we had a continuance we would have also been able to prove that the money used to pay for each of the items cited by agent Sputo came from Mr. Newton's personal funds and from his mother's inheritance-a total of $65,000 of personal funds deposited into the company's bank account and used for legitimate business reasons. Importantly, we would have also been able to show that these legitimate business expenses could have been fully deducted from RLAB taxes but were not. The court denied both requests and the case continued to verdict.

Pursuant to Rule 33 a district court may grant a new trial when a defendant was unable to receive a fair trial and suffered compelling prejudice. *United States v. Pedrick,* 181F3d 1264 (11th Cir. 1999) A court's decision to grant a new trial will be reviewed for abuse of discretion. In this case Mr. Newton's right to a fair trial was prejudiced by the admission of hearsay evidence inserted into this trial without prior notice and without giving the defense opportunity to investigate the allegations and to present its own evidence. The testimony by agent Sputo consisted of information

3

that he received from either speaking to a third-party or reviewing documents. Also, such statements were offered for the truth of the matter asserted. For example, agent Sputo testified that he placed a call to a club in California and was told by the person on the other end of the phone that this was a private golf club. Such information was an out-of-court statement by the person on the other end of the phone offered for the truth of the matter asserted. The same hearsay problem infected the other two sources of information concerning the defendant's homeowners association and his son's apartment. No rule of evidence creates an exception to the hearsay rule which would allow the admission of such testimony.

The hearsay problem was exacerbated by the government's prominent and frequent use of this evidence. The prosecutor more than once urged the jury to find that Mr. Newton had misused the money sent to RLAB by the pension fund. Apart from the fact that such allegation was not in the indictment and that no discovery documents were provided to verify the agent's testimony, the government repeatedly told the jury that Mr. Newton used the funds to play golf and pay other personal expenses. Such allegations based on hearsay evidence which the defendant did not have a reasonable opportunity to investigate, unfairly prejudiced Mr. Newton in the eyes of the jury. It was Mr. Newton's defense that he did not intend to defraud the fund but instead was working hard to make money for RLAB shareholders. The defendant did not have an opportunity to make it clear to this jury that Mr. Newton's expenses were business expenses related to RLAB. For these reasons, the defendant asks the court to vacate the jury verdict and grant him a new trial.

At a new trial the defendant will be prepared to present the following evidence:

1) By 2009 RLAB's corporate offices had been moved to the defendant's home at 37 Lafayette Dr., Rancho Mirage, California in order to economize on office expenses. RLAB agreed to pay the

4

homeowner association fees and certain utilities at this address given that it was being used as the office for the company. Additionally, we would present testimony that Mr. Newton changed the configuration of his home at 37 Lafayette Dr. in Rancho Mirage, CA so that it could be utilized as the company's corporate offices and that over the years from 2008 to 2009 and beyond his home was used to hold numerous business meetings.

2) Mr. Newton had agreed to work for RLAB for an annual salary of $1 until the economy improved. He invested personal monies received from his mother's inheritance into the business. In the months before, during and shortly after the government's undercover operation from late December 2008 until May 2009, Mr. Newton personally received money from an inheritance, and from his brother and family which he then loaned to RLAB, and he borrowed money from his life insurance policy and loaned this to RLAB as well. This loan totaled $65,000. Thus, when Mr. Newton wrote some checks from the RLAB bank account,-for items which covered some personal as well as a few business obligations–he used some of his own money which he had loaned to the company.

The defendant would also have been able to prove that RLAB did not expense or deduct from his tax returns as a business cost the checks he wrote for his son's apartment, or for the club, or for his cable TV, or homeowners association fee.

3) RLAB also agreed to pay for part of the cost of a one-bedroom apartment used by the defendant's son Chance Newton in consideration of Chance's agreement to continue to do RLAB's computer website and design work, to store product samples as well as inventory and business records, and to make deliveries of clothing samples and other materials as requested by RLAB.

4) RLAB agreed to pay the cost of maintaining the company's corporate business membership at the

5

club in Rancho Mirage which would be used by any all company personnel, clients, customers and business prospects. We would also present testimony s that Mr. Newton and others with an interest in RLAB made use of the corporate membership at the club by having lunches, business meetings and charitable functions in connection with and to promote the future of RLAB, Billy Martin's and Apocalypse Clothing Company.

This evidence will contradict the government's hearsay testimony and allegations made during closing argument that the defendant used the monies received from the pension fund for improper personal reasons. This evidence will allow the defendant to counter the unfair and untrue impression left by the government that Mr. Newton was a greedy self-serving man who did not care for the welfare of his company or shareholders and improperly used the fund's money for personal expenses. For these reasons Mr. Newton asks the court to grant him a new trial.

Respectfully submitted,

MICHAEL CARUSO
INTERIM FEDERAL PUBLIC DEFENDER

By:＿＿＿/s/ Miguel Caridad＿＿＿＿＿
Miguel Caridad
Assistant Federal Public Defender
Florida Bar No. 0161380
150 W. Flagler Street, Suite 1700
Miami, Florida 33130-1556
(305) 530-7000/(305) 536-4559: Fax
Email: miguel_caridad@fd.org

6

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 25, 2012, undersigned counsel electronically filed the

foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing

document is being served this day on all counsel of record or pro se parties identified on the attached

Service List in the manner specified, either via transmission of Notice of Electronic Filing generated

by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized

to receive electronically Notice of Electronic Filing.


By:____/s/ Miguel Caridad_____
       Miguel Caridad


## SERVICE LIST

United States of America v. DOUGLAS NEWTON
CASE NO. 11-60150-CR-COOKE/TURNOFF(s)(s)

United States Court, Southern District of Florida


**Miguel Caridad, AFPD**
150 West Flagler Street Suite 1700
Miami, Florida 33130
Tel. (305) 530-7000
Fax. (305) 536-4559
miguel_cariad@fd.org

**H. Ron Davidson, AUSA**
99 NE 4 Street
Miami, FL 33132
305-961-9405
Fax: 305-536-4699
Email: h.ron.davidson@usdoj.gov



PRIORITY MAIL®

★ PRIORITY ★
M A I L

USPS TRACKING NUMBER

9505 5110 5241 6054 4079 10

PRESS FIRMLY TO SEAL

DATE OF DELIVERY SPECIFIED*

USPS TRACKING™ INCLUDED*

INSURANCE INCLUDED*

Expected Delivery Day: 02/27/16

$

P S 0 0 0 0 1 0 0 0 0 1 4

EP14F July 2013
OD: 12.5 x 9.5

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

UNITED STATES
POSTAL SERVICE®

$1.30

USMS INSPECTED

FROM:
NEWTON, PRO SE
37 LAFAYETTE DR
Rancho Mirage, CA 92270

TO:
HON. JUDGE MARCIA G. COOKE
U.S. DISTRICT JUDGE
400 NORTH MIAMI AVE
RM 11-2
MIAMI, FL 33128-1810

This envelope is made from post-consumer waste. Please recycle - again.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; July 2013; All rights reserved.