UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   15-CIV-62112-COOKE
(11-CR-60150-COOKE)
MAGISTRATE JUDGE P.A. WHITE

DOUGLAS NEWTON,                          :

      Movant,                          :

v.                                       :          REPORT OF
                                                 MAGISTRATE JUDGE
UNITED STATES OF AMERICA,                 :

      Respondent.                       :
_____

## Introduction

This matter is before this Court on the movant's motion to vacate pursuant to 28 U.S.C. §2255, attacking his conviction and sentence entered in Case No. 11-60150-Cr-Cooke.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2255 Cases in the United States District Courts.   The Court has reviewed the motion [CV-DE#1],[1] the government's response [CV-DE#7], Movant's

---

[1] On October 3, 2015, Movant mailed a draft of his motion to the Court, with a cover letter indicating that he intended to file his motion the following Monday or Tuesday, October 5th or 6th, to augment the five (5) grounds for relief in his draft motion [CV-DE#4].  On October 5, 2015, Movant then mailed his final motion, adding an additional sixth (6th) ground for relief [CV-DE#!].  Otherwise, Movant's draft motion and final motion are substantively identical. Movant's final motion [CV-DE#1] is thus the operative pleading, although it was received and docketed before his draft motion.  See Pintado v. Miami-Dade Hous. Agency, 501 F.3d 1241, 1243 (11th Cir. 2007)(holding that an amended pleading becomes the operative document and supersedes the original pleading, which is deemed abandoned); Caraffa v. Carnival Corp., 34 So.3d 127, 130 (Fla. 3d DCA 2010)(stating the rule that "[p]rior pleadings are superceded by the amendment"); Barnes v. Horan, 841 So.2d 472, 475 n.1 (Fla. 3d DCA 2002)("An amended pleading that is complete in itself and does not refer to or adopt a former pleading as part of it supersedes the former pleading)(citation omitted); see also Dee v. Southern Brewing Co., 146 Fla. 588, 1 So.2d 562, 563 (Fla. 1941)(by the filing amended declaration plaintiff abandoned the original declaration and it no longer served any purpose in the record).

reply [CV-DE#9, 10], and all pertinent portions of the underlying criminal file.

<u>Claims</u>

<u>Ground One:</u>     My due process rights were violated because of the way the government conceived and implemented the reverse sting against me and others (which netted over 30 indictments for DOJ and the SEC over the last 36-48 months).

<u>Ground Two:</u>     My due process rights were violated when the government gave misleading and/or untruthful information to Judge Cooke concerning my prior history and personal character, when it had no such reliable or substantiated information at the time it targeted me.

<u>Ground Three:</u>   My due process rights were violated when I was not able to ask the government questions at a hearing when the government appeared to add consideration of my "due process" motion to Judge Cooke's calendar for April 23, 2012.

<u>Ground Four:</u>    My due process rights were further violated when the government failed to search for <u>Brady</u> information, specifically with respect to the materials in the SEC file.

<u>Ground Five:</u>    My due process rights were further violated because no expert or other witnesses testified at trial on my behalf, in order to support the defense raised on my behalf, including what is the definition of "artificially inflated price."

<u>Ground Six:</u>     My due process rights were further violate because Agent Sputo's testimony at my trial did not meet all the tests for admissibility under the Federal Rule of Evidence 807, and I did not receive a continuance after we asked for one to

gather necessary evidence to rebut the agent's testimony.

## Procedural and Factual Background[2]

Movant was charged with two counts of mail fraud, in violation of 18 U.S.C. §§ 1341 and 2 (Counts 1 and 2), one count of conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371 (Count 5), and four counts of securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff(a), 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2 (Counts 3-4, 6-7). Movant initially entered into a plea agreement and signed a factual proffer, but then proceeded to trial.

Movant was found guilty of all counts. The District Court then sentenced Movant to 30 months' imprisonment as to each of Counts 1 through 7, to run concurrently, followed by one year of supervised release.

On appeal, Movant argued that there was insufficient evidence to sustain his convictions and that the District Court erred in admitting evidence about the use of fraud proceeds, among other things. The Eleventh Circuit Court of Appeals rejected all of Movant's arguments. United States v. Newton, 559 F. App'x 902 (11th Cir. 2014). On October 6, 2014, the Supreme Court denied Movant's petition for writ of certiorari. On October 5, 2015 Movant filed the instant motion to vacate pursuant to § 2255 [CV-DE#1].[3]

---

[2]The relevant procedural history of Movant's underlying criminal case is not in dispute. A detailed recitation thereof, with citations to the record, can be found in Respondent's response. The court thus sets forth here only those portions of the procedural and factual background that are necessary and relevant to an understanding and resolution of the claims raised in the instant motion. Unless otherwise noted, citations to exhibits are to the exhibits to Respondent's response.

[3]The "prison mailbox rule," provides that a prisoner's documents are deemed filed at the moment the prisoner delivers them to prison authorities for forwarding to a court clerk. Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988).

The Eleventh Circuit Court of Appeals described the evidence against Movant in great detail, but the facts from that opinion relevant to the claims raised in Movant's motion can be summarized briefly as follows:

Movant was was the CEO of penny stock retail company called RLAB. In 2009, Movant spoke with an individual named Richard Epstein about a fund-raising opportunity for RLAB. Specifically, Epstein told Movant that Epstein knew an individual who controlled the assets of a pension fund, and that if Movant paid an undisclosed kick-back to that pension fund's fiduciary, the pension fund would invest in RLAB. Doing so, however, would violate the pension fund fiduciary's obligations to invest based solely on the best interests of the fund.

Movant agreed to this arrangement. The trial evidence showed that Movant made a series of $6,000 payments to the pension fund's manager. In exchange, the pension fund purchased RLAB stock. In addition, Movant concealed the true reasons for the undisclosed payments, for example, by signing bogus consulting agreements with a third company.

All of Movant's transactions were recorded on audio/video tape. At the time of the transactions, Epstein was cooperating with law enforcement, and the pension fund was fictitious.

At trial, the government also introduced evidence that Movant used the proceeds for personal expenses. As the Court of Appeals noted:

> Between March 25, 2009, and June 22, 2009, [Movant's] participation in the fraudulent scheme netted him $14,000 from each of the two RLAB stock sales ($20,000 purchase price minus his $6,000 kickback), plus $6,000 from [a second company] for a total of $34,000. During that same time period, Defendant wrote checks on the [corporate] account for his own personal expenses, including his homeowners' association, his country club, his residential gas and electric bills, and the rent on his son's apartment. On the other hand, between April and August 2009, Defendant paid only $13,000 of the

approximately $196,620 that [Newton's company] owed in back rent for its retail space in Trump Plaza.

Newton, 559 F. App'x at 908.

### Threshold Issues and Standard of Review

Pursuant to 28 U.S.C. §2255, a prisoner in federal custody may move the court which imposed sentence to vacate, set aside or correct the sentence if it was imposed in violation of federal constitutional or statutory law, was imposed without proper jurisdiction, is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. §2255. If a court finds a claim under Section 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." Id. To obtain this relief on collateral review, however, a habeas petitioner must "clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)(rejecting the plain error standard as not sufficiently deferential to a final judgment).

The question of whether a claim is cognizable on post-conviction review is a threshold issue. See Lynn v. United States, 365 F.3d 1225, 1233 (11th Cir. 2004). "Courts have long and consistently affirmed that a collateral challenge, such as a §2255 motion, may not by a surrogate for direct appeal." Id. at 1232. The grounds for collateral attack on final judgments are therefore extremely limited. As set forth above, a federal prisoner is entitled to relief under §2255 only if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law or (4) is otherwise subject to collateral attack. 28 U.S.C. §2255; Thomas v. Crosby, 371 F.3d 782, 811 (11th Cir.2004). As

5

such, relief under § 2255 is generally reserved for jurisdictional errors and transgressions of constitutional rights, as well as for fundamental defects which inherently result in a complete miscarriage of justice, and omissions inconsistent with rudimentary demands of fair procedure. See Reed v Farley, 512 U.S. 339 (1994); United States v. Addonizio, 442 U.S. 178 (1979); Hill v. United States, 368 U.S. 424 (1962); Lynn, 365 F.3d at 1232-33.

Because a motion to vacate under §2255 is not a substitute for direct appeal, a defendant must advance available challenges to a criminal conviction or sentence on direct appeal, or else the defendant will be procedurally barred from presenting those claims in a §2255 proceeding.  Lynn, 365 F.3d at 1234; see also Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994)(recognizing that a ground is "available" for direct appeal when its "merits can be reviewed without further factual development").  Absent a showing that a ground of error was unavailable on direct appeal, a criminal defendant wishing to collaterally challenge a procedurally defaulted claim can do so only by demonstrating either 1) cause for not raising the claim on direct appeal and actual prejudice resulting from the alleged violation, or 2) actual innocence. Lynn, 365 F.3d at 1235-36 (citations omitted).  Conversely, "[o]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255."  United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000)(internal marks, citation and footnote omitted); see also Mills, 36 F.3d at 1056 ("[P]rior disposition of a ground of error on direct appeal, in most cases, precludes further review in a subsequent collateral proceeding.").

Cause for a procedural default exists when the default has resulted from some objective factor external to the defense that cannot be fairly attributable to the defendant's own conduct. See, Id. at 1235; Coleman v. Thompson, 501 U.S. 722, 753 (1991).  A

meritorious claim of ineffective assistance of counsel can constitute cause. Nyhuis, 211 F.3d at 1344. Prejudice results when the alleged error works to the defendants actual and substantial disadvantage, such that it undermines the integrity of the entire proceeding. Frady, 456 U.S. at 170. Actual innocence means factual innocence rather than mere legal insufficiency. Schulp v. Delo, 513 U.S. 298, 324 (1995). This exception is exceedingly narrow in scope and requires a showing that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted. See Bousley v. United States, 523 U.S. 614, 623 (1998). To be credible, claims of actual innocence must generally be supported by new, reliable evidence that was not presented at trial and, because such evidence is unavailable in the vast majority of cases, claims of actual innocence are rarely successful. Schlup, 513 U.S. at 324.

Under §2255, unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. §2255; see also Smith v. Singletary, 170 F.3d 1051, 1053 (11th Cir. 1999)("[a] habeas corpus petitioner is entitled to an evidentiary hearing on his claim 'if he alleges facts which, if proven, would entitle him to relief.'" )(internal citations and quotations omitted)). However, the movant in a §2255 proceeding must allege reasonably specific, non-conclusory facts that, if true, would entitle him to relief. Aron v. United States, 291 F.3d 708, 715, n. 6 (11th Cir. 2002). Otherwise, no evidentiary hearing is warranted. Id, 291 F.3d at 714-715 (explaining that no evidentiary hearing is needed when claims are "affirmatively contradicted by the record" or "patently frivolous"); Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989)(noting that a hearing is not required on claims which are based upon unsupported

7

generalizations or affirmatively contradicted by the record). Moreover, a court need not conduct an evidentiary hearing where the issues can be conclusively decided on the basis of the evidence already in the record, and where the petitioner's version of the facts have already been accepted as true. <u>See</u>, <u>e.g.</u>, <u>Chavez v. Sec'y Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1070 (11th Cir. 2011); <u>Turner v. Crosby</u>, 339 F.3d 1247, 1274-75 (11th Cir. 2003); <u>Smith</u>, 170 F.3d at 1054; <u>Schultz v. Wainwright</u>, 701 F.2d 900, 901 (11th Cir. 1983); <u>Roberts v. Marshall</u>, 627 F.3d 768, 773 (9th Cir. 2010).

The pleading requirements for a motion to vacate under §2255 apply equally with regard to claims of ineffective assistance of counsel.[4]  Conclusory allegations of ineffective assistance of counsel are insufficient to state a claim.  <u>Wilson v. United States</u>, 962 F.2d 996, 998 (11th Cir. 1992); <u>see also</u> <u>Hill v. Lockhart</u>, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)(conclusory allegations of ineffective assistance of counsel are insufficient to raise a constitutional issue).  A movant's claims of ineffective assistance of counsel are thus subject to dismissal without a hearing when they "are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible.'" <u>Tejada v. Dugger</u>, 941 F.2d 1551, 1559 (11th Cir. 1991)(citations omitted).  The movant in a §2255 proceeding alleging ineffective assistance of counsel must set forth specific facts supported by competent evidence, raising

---

[4]It is well-settled that, in order to prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate both (1) that his counsel's performance was deficient, and (2) that he suffered prejudice as a result of that deficient performance. <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984). "To establish deficient performance, a defendant must show that his counsel's representation fell below an objective standard of reasonableness in light of prevailing professional norms at the time the representation took place." <u>Cummings v. Sec'y for Dep't of Corr.</u>, 588 F.3d 1331, 1356 (11th Cir.2009).  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>

detailed and controverted issues of fact which, if proved at a
hearing, would entitle him to relief. <u>United States v. Aiello</u>, 900
F.2d 528, 534 (2nd Cir. 1990). Bare and conclusory allegations of
ineffective assistance of counsel which contradict the existing
record and are unsupported by affidavits or other indicia of
reliability are insufficient to require a hearing or further
consideration. <u>See</u> <u>United States v. Robinson</u>, 64 F.3d 403, 405 (8th
Cir. 1995); <u>Diaz v. United States</u>, 930 F.2d 832, 834-35 (11th Cir.
2009). A movant's claim of ineffective assistance of counsel will
thus fail unless he affirmatively demonstrates both attorney error
and resulting prejudice by alleging facts or specific details to
identify precisely how his attorney failed to fulfill his
obligations. <u>See</u> <u>Spillers v. Lockhart</u>, 802 F.2d 1007, 1010 (8th Cir.
1986)(2254 context).


Procedural Bar

As an initial matter, Movant himself concedes that he did
raise the claims he alleges in <u>Grounds One, Two, Three and Four</u> on
direct appeal. As set forth above, these claims are therefore
procedurally barred, unless Movant can demonstrate cause and
prejudice for his procedural default, or actual innocence. <u>See</u>
<u>Lynn</u>, 365 F.3d at 1235-36 (citations omitted). This Movant cannot
do.

First, Movant cannot establish that appellate counsel was
ineffective in failing to raise these issues on appeal as a basis
for cause to avoid the procedural bar. Specifically, Movant
himself concedes that his appellate counsel believed Movant had
stronger issues to appeal, and that he agreed with the need to
limit those issues to a select few [CV-DE#1]. Movant's concession
is well-taken.

The Sixth Amendment does not require attorneys to press every
non-frivolous issue that might be raised on appeal, provided that

9

counsel uses professional judgment in deciding not to raise those issues. Jones v. Barnes, 463 U.S. 745, 753-54 (1983). The Supreme Court has recognized that "a brief that raises every colorable issue runs the risk of burying good arguments - those that . . . 'go for the jugular.'" Id. at 753. To be effective, therefore, appellate counsel may select among competing non-frivolous arguments in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. 259, 288, 120 S.Ct. 746, 765, 145 L.Ed.2d 756, 781-82 (2000). Indeed, the practice of "winnowing out" weaker arguments on appeal, so to focus on those that are more likely to prevail, is the "hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434, 445 (1986). In considering the reasonableness of an appellate attorney's decision not to raise a particular claim, therefore, this Court must consider "all the circumstances, applying a heavy measure of deference to counsel's judgments." Eagle v. Linahan, 279 F.3d 926, 940 (11th Cir. 2001), quoting, Strickland, 466 U.S. at 691. In the context of an ineffective assistance of appellate counsel claim, "prejudice" refers to the reasonable probability that the outcome of the appeal would have been different. Eagle v. Linahan, 279 F.3d 926, 943 (11th Cir. 2001); Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990); see also Robbins, 528 U.S. at 285-86 (claim for ineffective assistance of appellate counsel requires showing that appellate counsel's performance was deficient and that, but for counsel's deficient performance, the defendant would have prevailed on appeal); Shere v. Sec'y Fla. Dep't of Corr., 537 F.3d 1304, 1310 (11th Cir. 2008)(same). Thus, in determining whether the failure to raise a claim on appeal resulted in prejudice, the courts must review the merits of the omitted claim and, only if it is concluded that it would have had a reasonable probability of success, then can counsel's performance be deemed necessarily prejudicial because

10

it affected the outcome of the appeal.  Eagle, 279 F.3d at 943; see also Card v. Dugger, 911 F.2d 1494, 1520 (11 Cir. 1990)(holding that appellate counsel is not required to raise meritless issues).

Here, as set forth infra, Movant's claims set forth in Grounds One, Two, Three and Four fail on the merits.  As such, Movant cannot establish that appellate counsel was ineffective in failing to raise these claims on direct appeal.  Jones, 463 U.S. 745, 753-54 (appellate counsel need not raise every non-frivolous issue); Robbins, 528 U.S. at 288 (appellate counsel may select arguments in order to maximize the likelihood of success); Murray, 477 U.S. at 536 (the practice of "winnowing out" weaker arguments is the "hallmark of effective appellate advocacy"); see also Card, 911 F.2d at 1520 (appellate coun sel is not required to raise meritless issues); Eagle, 279 F.3d at 943 ("prejudice" for ineffective assistance of appellate counsel refers to a reasonable probability that the outcome of the appeal would have been different); Cross, 893 F.2d at 1290 (same); Smith, 528 U.S. at 285-86 (claim for ineffective assistance of appellate counsel requires showing that appellate counsel's performance was deficient and that, but for counsel's deficient performance, the defendant would have prevailed on appeal); Shere, 537 F.3d at 1310 (same).

Next, even assuming Movant could establish cause for his procedural default, Movant cannot establish prejudice to overcome the procedural bar for the same reasons that Movant cannot establish that he is entitled to relief on the merits of these claims, as set forth in the discussion of Grounds One, Two, Three and Four below.  See Frady, 456 U.S. at 170 (prejudice under cause-and-prejudice analysis results when the alleged error works to the defendants actual and substantial disadvantage, such that it undermines the integrity of the entire proceeding); Addonizio, 442 U.S. at 185 (district court lacks authority to review alleged errors in a § 2255 proceeding that do not constitute a fundamental

11

defects which inherently results in a complete miscarriage of justice).

Finally, Movant does not allege actual innocence in order to avoid the procedural bar and, even if he did, any such claim would similarly fail. See Schulp, 513 U.S. at 324 (actual innocence means factual innocence, and to be credible such claims must generally be supported by new, reliable evidence that was not presented at trial); Bousley, 523 U.S. at 623 (claims of actual innocence require a showing that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted).

## Discussion

In Ground One, Movant claims that his due process rights were violated because of the way the government conceived and implemented the reverse sting against him and others. In support of this claim, Movant alleges that the reverse sting operation used in this case is in conflict with the goals and purposes of the FBI, whose director has publicly stated that the goal of the bureau is to stop and fight crime, not to be involved in the set-up and "manufacture" of new crimes. Movant's allegations in this ground mirror a pro se motion to dismiss that he filed in the District Court, which he incorporates by reference in this ground for relief [See CV-DE#1; CR-DE#67].

As numerous courts have held, reverse sting operations like the one in Movant's case do not violate a defendant's due process rights where, as here, there is no evidence of entrapment. See United States v. Sanchez, 138 F.3d 1410, 1413 (11th Cir. 1998), see also United States v. Knight, 917 F.2d 1, 2 (5th Cir. 1990) ("The reverse sting, being a completely acceptable federal device as long as the predisposition to commit crime is present, and the involvement of the federal officials in this particular sting

operation make it clear beyond any doubt that this was not an outrageous police operation in violation of due process of law."); United States v. Osborne, 935 F.2d 32, 37 (4th Cir. 1991) (describing "the abundant and lenient appellate precedent concerning the constitutionally permissible government conduct in undercover operations"); United States v. Sarraj, 665 F.3d 916 (7th Cir. 2012). Indeed, in United States v. Gifford, the First Circuit Court of Appeals rejected a defendant's claim, similar to Movant's, that such sting operations are unconstitutional because there was no rational basis for the undercover operation and the government supplied the contraband. 17 F.3d 462, 471 (stating the "Executive Branch is free, within broad limits, to set such snares for unwary criminals").

Based on the foregoing, Movant cannot establish that the use of the "reverse sting" operation in his case violated any specific Constitutional guarantee, or rises to the level of a fundamental defect which inherently resulted in a complete miscarriage of justice. As such, Movant is not entitled to relief on this claim. See Addonizio, 442 U.S. at 185; see also 28 U.S.C. § 2255.

In Ground Two, Movant claims that his due process rights were violated when the government gave misleading and/or untruthful information to the District Judge concerning his prior history and personal character, when it had no such reliable or substantiated information at the time it targeted him. In support of this claim, Movant alleges that, in response to his pro se motion to dismiss referenced in Ground One above, the government stated that "as a factual matter" it had proof that Movant was engaged in on-going securities violations, and that he "continuously defrauded investors and deserved to the target of the government's undercover operation" [DE#1, citing CR-DE#74]. Movant further alleges that the government did not tell the District Judge that its sole principal source of information about him came from its cooperating

defendant, Richard Epstein, who Movant alleges had recently been caught lying to his own case agent.

Contrary to Movant's allegations, the record reflects that the government did in fact have reliable information that Movant was engaged in criminal activity. As the trial transcripts reflect, the government had a recording of Movant and Epstein discussing how they had "done a bunch of deals, probably five, six, seven deals together" before the crimes alleged in the Superseding Indictment [Tr. 5/2/2012 at 73]. Also contrary to Movant's allegations, any fair reading of the government's response to Movant's motion to dismiss makes clear that the principal source of the government's factual information was Epstein (the cooperating defendant) [See CR-DE#74]. Moreover, Movant himself in his pro se motion to dismiss made the District Court aware of Epstein's role and his failure to follow agent instructions [CR-DE#67], thereby undermining any claim that the District Court was unaware of this fact, or of the basis for the FBI's covert operation against Movant.

Based on the foregoing, Movant cannot establish the government's statements in response to his motion to dismiss violated any specific Constitutional guarantee, or rise to the level of a fundamental defect which inherently resulted in a complete miscarriage of justice. As such, Movant is not entitled to relief on this claim. See Addonizio, 442 U.S. at 185; 28 U.S.C. § 2255; see also Aron, 291 F.3d at 714-715 (no evidentiary hearing is needed when claims are patently frivolous or affirmatively contradicted by the record); Holmes, 876 F.2d at 1553 (no hearing required on claims which are based upon unsupported generalizations or affirmatively contradicted by the record).

In Ground Three, Movant claims that his due process rights were violated when he was not able to ask the government questions at a hearing when the government appeared to add consideration of

14

his "due process" motion to the District Judge's calendar for April 23, 2012. In support of this claim, Movant alleges that at the outset of this hearing, the District Court listed what it believed were the pending motions that needed to be addressed in advance of trial, which did not include Movant's <u>pro se</u> motion to dismiss referenced in <u>Ground One</u>, above. Movant further alleges that when the District Court asked the parties if it had missed anything the government brought Movant's <u>pro se</u> motion to dismiss to Court's attention, that he does not recall being advised that his motion would be taken up on that date, and that his attorney did not raise any objections when the AUSA told the District Judge that Movant had a history of suspected securities fraud.

As an initial matter, a criminal proceeding in which the court denies the defendant an opportunity to speak does not result in a "fundamental defect" warranting relief under § 2255. <u>See</u> <u>Hill v. United States</u>, 368 U.S. 424, 428 (1962). Moreover, here, the District Court did in fact discuss the motion in open court [<u>See</u> CR-DE#118, denying the motion after "a hearing held"]. Finally, the motion lacked merit for the reasons set forth in the discussion of <u>Ground One</u>, above.

Based on the foregoing, Movant cannot establish then denial of his motion to dismiss based on the conduct of the April 23, 2012 hearing violated any specific Constitutional guarantee, or rises to the level of a fundamental defect which inherently resulted in a complete miscarriage of justice. As such, Movant is not entitled to relief on this claim. <u>See</u> <u>Addonizio</u>, 442 U.S. at 185; 28 U.S.C. § 2255.[5]

---

[5]To the extent that Movant may mean to claim that counsel was ineffective in failing to object when the government stated that Movant had a history of securities fraud, Movant fails to allege that counsel's performance was deficient in this regard or that, but for this alleged failure, there is a reasonable probability that the result of the proceedings would have been different. As such, any such claim of ineffective assistance of counsel is subject to summary denial on this basis alone. <u>See</u> <u>Aiello</u>, 900 F.2d 534 (movant in §2255 proceeding alleging ineffective assistance of counsel must set forth specific facts which,

In <u>Ground Four</u>, Movant claims that his due process rights were further violated when the government failed to search for <u>Brady</u> information, specifically with respect to the materials in the SEC file.  In support of this claim, Movant alleges that his SEC file would have shown that his company's office was at his home, and that he did not spend any of the pensioner's money for personal expenses (such as for his son's apartment), as stated by agent Sputo at trial.

In <u>Brady v. Maryland</u>, the Supreme Court held that due process requires a prosecutor to disclose material exculpatory evidence to the defendant before trial.  373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97 10 L.Ed.2d 215 (1963).[6]  Here, however, review of the trial

---

if proved at a hearing, would entitle him to relief).  But even if he had, any such claim would fail for the reasons set forth in the discussion of <u>Ground Two</u>, above; that is, the government did have a basis for its statement that Movant had a history of suspected securities fraud.  It is not professionally unreasonable for a lawyer to fail to pursue issues which have little or no chance of success, and a criminal defendant is not prejudiced by counsel's failure to pursue non-meritorious claims or those on which they likely would not have prevailed.  <u>See</u>, <u>generally</u>, <u>Strickland</u>, 466 U.S. at 690 ("counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment"); <u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411, 1422 (2009)(the law does not require counsel to raise every available non-frivolous defense); <u>Chandler v. Moore</u>, 240 F.3d 907, 917 (11th Cir. 2001)(counsel is not ineffective for failing to raise a non-meritorious objection); <u>Bolender v. Singletary</u>, 16 F.3d 1547, 1573 (11th Cir. 1994)("[I]t is axiomatic that the failure to raise non-meritorious issues does not constitute ineffective assistance" of counsel); <u>United States v. Winfield</u>, 960 F.2d 970, 974 (11th Cir. 1992)(failure to raise meritless issues cannot prejudice a client); <u>Card v. Dugger</u>, 911 F.2d 1494, 1520 (11th Cir. 1990)(counsel is not required to raise meritless issues); <u>Iron Wing v. United States</u>, 34 F.3d 662, 665 (8th Cir. 1994)(movant not prejudiced by counsel's failure to file motion to suppress that would have been denied); <u>James v. Borg</u>, 24 F.3d 20, 27 (9th Cir. 1994)(counsel's failure to make futile motions does not constitute ineffective assistance); <u>United States v. Hart</u>, 933 F.2d 80, 83 (1st Cir. 1991)(counsel is not required to waste the court's time with futile or frivolous motions); <u>U.S. v. Lora-Pena</u>, 375 Fed.Appx. 242, 245-46 (3rd Cir. 2010); <u>U.S. v. Frost</u>, 355 Fed.Appx. 230, 234 (10th Cir. 2009); <u>Berry v. U.S.</u>, 281 Fed.Appx. 967, 969 (11th Cir. 2008); <u>Shell v. United States</u>, 448 F.3d 951, 955 (7th Cir. 2006); <u>United States v. Molina</u>, 934 F.2d 1440, 1447 (9th Cir. 1994).

[6]To prevail on a <u>Brady</u> claim, the defendant must establish: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) the defendant incurred prejudice.  <u>Wright v. Sec'y, Florida Dep't of Corr.</u>, 761 F.3d 1256, 1278 (11th Cir. 2014) cert. denied sub nom. <u>Wright v. Jones</u>, 135 S. Ct. 2380, 192 L. Ed. 2d 168 (2015)(citations

transcript reveals that during the cross-examination of Agent Sputo, counsel for Movant repeatedly asked questions about where Movant's son lived (Tr. 5/7/2012 at 116-19), Movant's use of a country club (Id. at 119-21), and payments to Movant's homeowner's association (Id at 121-26). As such, the record establishes that Movant was fully award of these issues, and he himself would thus have had the information with which to prove that the alleged fraud proceeds were used for legitimate purposes. See Wright, 761 F.3d at 1278 (a defendant cannot meet the second Brady prong when, prior to trial, he had within his knowledge the information by which he could have ascertained the alleged Brady material).

Based on the foregoing, Movant cannot establish that the government's failure to search Movant's SEC file for Brady material violated any specific Constitutional guarantee, or rises to the level of a fundamental defect which inherently resulted in a complete miscarriage of justice. As such, Movant is not entitled to relief on this claim. See Addonizio, 442 U.S. at 185; 28 U.S.C. § 2255.

In Ground Five, Movant alleges that his due process rights were further violated because no expert or other witnesses testified at trial on his behalf, in order to support the defense raised on his behalf, including what is the definition of "artificially inflated price." Because it would have been defense counsel's obligation to present an expert witness, this amounts to a claim of ineffective assistance of counsel.[7]

---

omitted). "A defendant cannot meet the second prong when, prior to trial, he had within his knowledge the information by which he could have ascertained the alleged Brady material." Id. (internal quotations and citations omitted). "In such cases, when the defendant has equal access to the evidence, disclosure is not required and there is no suppression by the government." Id.

[7]"It is well established that the submissions of a pro se litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)(citations omitted). This solicitous approach to pro se submissions authorizes the district courts to recast a pro se litigant's claim so that its

"Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978). Indeed, "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision and it is one that [the courts] will seldom, if ever, second guess." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995); see also Dorsey v. Chapman, 262 F.3d 1181, 1186 (11th Cir. 2001)(holding that petitioner did not establish ineffective assistance based on defense counsel's failure to call expert witness for the defense in that counsel's decision to not call the expert witness was not so patently unreasonable a strategic decision that no competent attorney would have chosen the strategy).

A claim of ineffective assistance based on the failure to consult and call an expert requires "evidence of what a scientific expert would have stated" at trial in order to establish Strickland prejudice. Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009)(citation omitted); accord Delgado v. United States, 162 F.3d 981, 983 (8th Cir. 1998). A habeas petitioner's unsupported and speculative assertion that testimony of expert witness would have caused the jury to view the evidence differently is insufficient to establish prejudice, as is required to warrant habeas relief on basis of alleged ineffective assistance of counsel. See Duran v. Walker, 223 Fed.Appx. 865, 875 (11th Cir. 2007).

Here, Movant fails to allege that counsel was deficient in failing to call an expert to testify about the meaning of the term "artificially inflated price" or that, but for this alleged failure, there is a reasonable probability that the result of the

---

substance corresponds to a proper legal theory. See Castro v. United States, 540 U.S. 375, 381-82 (2003)(citations omitted).

proceedings would have been different. As such, Movant's claim of ineffective assistance counsel is subject to summary denial on this basis alone. See Aiello, 900 F.2d 534 (movant in §2255 proceeding alleging ineffective assistance of counsel must set forth specific facts which, if proved at a hearing, would entitle him to relief). But even if Movant had, Movant would nevertheless be unable to prevail on this claim.

Here, as set forth above, Movant initially entered into a plea agreement and signed a factual proffer. Defense counsel, however, successfully argued that the plea agreement and factual proffer should not be admitted at trial [CR-DE#87]. Calling the expert that Movant suggests most certainly ran a high risk of opening the door to the admission of these documents. Moreover, there was little reason to take this risk because, as the record reflects, the government was prepared to offer its own expert in rebuttal, who would have undermined Movant's entire theory of defense at trial[8] [CR-DE#98, describing anticipated witness testimony]. Therefore, Movant cannot overcome Strickland's strong presumption that counsel made a reasonable strategic decision not to call any such expert. See Strickland, 466 U.S. at 690 ("counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment"); see also Dorsey, 262 F.3d at 1186 (holding that petitioner did not establish ineffective assistance where counsel's decision to not call an expert witness was not so patently unreasonable that no competent attorney would have chosen the strategy).

Moreover, even if Movant could establish deficient performance, Movant would not be able to establish prejudice. As the Eleventh Circuit stated in Movant's direct appeal:

---

[8]As Movant himself alleges, his sole defense was that he did not sell stock to the fund at an "artificially inflated price" [CV-DE#1].

> The evidence at trial established that the 30% kickbacks made the price of the stock irrelevant. The parties involved cared only about the kickback payments, not the stock price. In addition, because of the kickbacks, the pension fund purchased restricted shares at the higher price set for freely-traded shares. Thus, the kickback itself artificially increased the stock price. The pension fund paid $20,000 for stock that should have cost only $14,000—absent the $6,000 bribe. Ample evidence existed for the jury to conclude that the fraudulent scheme caused the pension fund to pay inflated prices for the restricted shares of stock.

Newton, 559 F. App'x at 911. As such, Movant cannot establish a reasonable probability that the result of the proceeding would have been different, even if there had been a battle of experts at trial.

Based on the forgoing, Movant cannot establish a claim of ineffective assistance of counsel. See Strickland, 499 U.S. at 697 (a defendant must establish both deficient performance and prejudice in order to obtain relief on an ineffective-assistance-of-counsel claim); see also Chavez, 647 F.3d at 1070 (evidentiary hearing not warranted when petitioner's factual allegations have already been taken as true); Turner, 339 F.3d at 1274-75 (same).

In Ground Six, Movant alleges that his due process rights were further violated because Agent Sputo's testimony at his trial did not meet all the tests for admissibility under Federal Rule of Evidence 807, and he did not receive a continuance after the defense asked for one to gather necessary evidence to rebut the agent's testimony. In support of this claim, Movant alleges that Agent Sputo's testimony was improperly admitted and gave the jury reason to believe that Movant used to proceeds of the alleged fraud for personal reasons. Movant further alleges that the Indictment made no mention of the misuse of funds but that even if it did, and even if the testimony was admissible, the defense was not given

time to show that the testimony was erroneous, and that it conflicted with data allegedly in possession of the SEC.

As an initial matter, the Eleventh Circuit already addressed the issue of the admissibility of Agent Sputo's testimony in Movant's direct appeal:

> Following a review of the record, we determine that Sputo's testimony was not improperly admitted. Sputo testified that based on his review of bank records, Defendant had used corporate funds to pay for his homeowners' association, country club, son's apartment, and other personal expenses. Such testimony was permissible for a lay witness consistent with Federal Rule of Evidence 701. <u>See</u> <u>Agro Air Assocs., Inc. v. Houston Cas. Co.</u>, 128 F.3d 1452, 1456 (11th Cir.1997) (finding that, pursuant to Rule 701, a lay witness is entitled to testify about their "opinions or inferences" which may be helpful to give a clear understanding of the witnesses testimony). Furthermore, Sputo was subject to cross-examination on this testimony, therefore "any objection to the testimony went to the weight of the evidence, not to its admissibility." <u>Id.</u>

<u>Newton</u>, 559 F. App'x at 912. As such, Movant cannot relitigate this issue in this § 2255 proceeding. <u>See</u> <u>Nyhuis</u>, 211 F.3d at 1343; <u>Mills</u>, 36 F.3d at 1056. But even if he could, as the Court of Appeals held in <u>Argo Air</u>, <u>supra</u>, a lay witness – like Special Agent Sputo – can testify about their "opinions or inferences" which may be helpful to give a clear understanding of the witnesses testimony, so long as the other side can cross examine that witness. 128 F.3d at 1456. And as set forth in the discussion of <u>Ground Four</u>, above, that is precisely what occurred here.

Based on the foregoing, Movant cannot establish that the admission of Agent Sputo's testimony violated any specific Constitutional guarantee, or rises to the level of a fundamental defect which inherently resulted in a complete miscarriage of justice. As such, Movant is not entitled to relief on this claim. <u>See</u> <u>Addonizio</u>, 442 U.S. at 185; <u>see</u> <u>also</u> 28 U.S.C. § 2255.

Finally, to the extent that Movant alleges that the defense was not given time to show that Agent Sputo's testimony was erroneous and that it conflicted with data allegedly in possession of the SEC, this appears to be a sub-claim that also is procedurally barred for failure to raise it on direct appeal. But regardless, these allegations merely re-iterate the allegations Movant makes in support of <u>Ground Four</u>, above. As such, any claim predicated upon the additional allegation that Movant was not granted a continuance on this basis similarly fails for the reasons set forth in the discussion of <u>Ground Four</u>, above.

Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and that if a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts (hereinafter "Habeas Rules"). Rule 11(a) further provides that "[b]efore entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." <u>Id.</u> Regardless, a timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Habeas Rules.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). Where a §2255 movant's constitutional claims have been adjudicated and denied on the merits by the district court, the movant must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further.

Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000). Where a §2255 movant's constitutional claims are dismissed on procedural grounds, a certificate of appealability will not issue unless the movant can demonstrate both "(1) 'that jurists of reason would find it debatable whether the [or motion] states a valid claim of denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (4th Cir.2001)(quoting Slack, 529 U.S. at 484). "Each component of the §2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." Slack, 529 U.S. at 484-85.

Having determined that some of Movant's claims are barred on procedural grounds and/or fail on the merits, the court considers whether Movant is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in the instant motion. After reviewing the issues presented in light of the applicable standard, the court concludes that reasonable jurists would not find debatable the correctness of the court's procedural rulings. The court further concludes that reasonable jurists would not find the court's treatment of any of Movant's remaining claims debatable and that none of the issues are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is not warranted. See Miller-El, 537 U.S. at 336-38; Slack, 529 U.S. at 483-84; see also Slack, 529 U.S. at 484-85 (each component of the §2253(c) showing is part of a threshold inquiry); Rose, 252 F.3d at 684.

<u>Conclusion</u>

Based upon the foregoing, it is recommended that the motion to vacate be DENIED, and that no certificate of appealability be issued.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report, including any objections with regard to the denial of a certificate of appealability.

SIGNED this 26th day of May, 2016.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Douglas Newton
     96993-004
     Keen Mountain Correctional Center
     Inmate Mail/Parcels
     Route 629 Post Office Box 860
     Oakwood, VA 24631

     H. Ron Davidson
     United States Attorney's Office
     99 NE 4 Street
     Miami, FL 33132